UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20256-CR-SCOLA/GARBER

UNITED STATES OF AMERICA,

v.

DARIUS MOORE,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge Robert N. Scola, Jr. Pursuant to such reference the Court has received the defendant Moore's Motion to Suppress In-Court and Out-Of-Court Identification [DE 26] and the government's response in opposition [DE 30]. A hearing on said motion was held on October 9, 2012. The defendant appeared with his attorney of record, Assistant Federal Public Defender Hector A. Dopico, and the government was represented by Assistant United States Attorney Amanda Perwin.

## FACTUAL BACKGROUND

On August 14, 2011, the alleged victims,[1] were returning from an outing at the beach and parked their Nissan Altima in a parking lot which is part of their apartment complex located at 6980 N.W. 186 Street in Miami. O.R. and E.V. exited their car to unload the trunk; R.V. remained in the car. O.R. and E.V. were approached by a black male (the defendant) holding a black semi-automatic firearm and wearing a mask that partially covered his face. The defendant pointed his gun at O.R.

---

[1] The husband (R.V), his wife (O.R.), and son (E.V.)

and told her to hand him her cell phone and car keys. She did not have a cell phone but did hand the defendant her car keys. The defendant then approached the passenger side of the car and pointed his weapon at R.V., telling him to get out of the car and R.V. did so. The defendant then left the scene in the family's automobile.

The police were notified and a BOLO was sent out by Miami-Dade Police Department describing the Nissan Altima. The vehicle was observed by police driving south on N.W. 67th Avenue close to an entrance to the Palmetto Expressway. Police gave high speed chase to the Altima which crashed at the intersection of N.W. 44th Street and N.W. 8th Avenue. The driver of the Altima was the defendant, Darius Moore; a passenger was identified as his brother, Davares Rowe. Both were placed under arrest.

Following the carjacking the three victims were interviewed by detectives from the Miami-Dade Police Department. O.R described the carjacker as about 5'11" tall, approximately 160 pounds, with black hair and brown eyes. She said that he was wearing dark clothing and a mask partially covered his face. She stated that she believed that she could identify him if she saw him again. Both D.V. and R.V. gave similar statements and advised that they could identify the carjacker.

The victims' car was recovered and the defendant and his brother had been arrested but the victims were not advised of these facts. The defendant and his brother were kept at a location nearby in order for a show-up to be conducted.

The victims were then taken to N.W. 12th Avenue and 46th Street to prepare for the show-up, after which each of the victims were driven separately to N.W. 44th Street and 8th Avenue to view the defendant and his brother. The Altima, which had been recovered, was not visible to the victims. They were each advised that the carjacker may or may not be there but, after viewing, were to tell

the police whether they recognized anyone.  Each of the victims were shown the defendant and his brother, in succession, each of whom were handcuffed.  The defendant was immediately identified by E.V., based upon his facial features, clothing, and body type.  R.V. also immediately identified the defendant by his clothing, facial features, and body type.  O.R. identified the defendant by his facial features, height, weight, and clothing.  There was no hesitancy in the identifications by any of the three victims.

## DISCUSSION

The defendant's Motion to Suppress, etc. is based upon his assertion that the identification of the defendant was flawed because the procedure utilized was "unduly suggestive."[2]  However, said Motion contains allegations that were nullified by the testimony presented by the government at the hearing.  For example, the defendant claims that (1) his identification was made by describing a "black male wearing a mask and holding a firearm;" (2) that the "detectives conducted show-up identifications by bringing the alleged victims to the scene of the crash;" and (3) that "Mr. Moore was in handcuffs, standing near marked police vehicles and the wreckage of the Nissan Altima during the show-up identification."[3]

The witnesses identified the defendant not only by stating that he was a black male wearing a mask and holding a firearm, but the witnesses further advised that they identified him by additional factors such as his height, weight, clothing, color of his eyes and hair, and that his face was partially covered by a mask.  Further, the defendant crashed the Altima near the intersection of N.W. 44th Street and 8th Avenue.  The witnesses were not taken to the scene of the crash for the show-up but

---

[2]Defendant's Motion to Suppress, etc. at page 3.

[3]*Id.* at 2.

were taken to the area of N.W. 12th Avenue and 46th Street, several blocks away from the site of the crash. Although it is true that the defendant was handcuffed at the show-up, the show-up did not take place near the wreckage of the Altima, which was located blocks away from the show-up locale.

The government presented the testimony of Anthony Feria, a detective with over twenty-three years experience at the Miami-Dade Police Department. He is currently assigned to the Criminal Investigation Division investigating robberies, where he has served for twelve years. Detective Feria testified that he had been directed to the scene of the subject carjacking, where he interviewed the three victims. The victims related what had happened and each gave their descriptions of the defendant.[4]

Detective Feria testified that upon learning that the Altima had crashed, he did not advise the victims of that fact or that the defendant or his brother had been apprehended. Feria also testified that he advised the officers at the scene of the crash and arrest of the defendant and his brother to keep them in separate police cars. Feria testified that "I had the officers just wait there. I told them to just keep everybody here and I will be taking the victims one by one and doing a show-up and then I will bring them back." He testified that the show-up took place "on the corner of 44th Street and I believe it was 8th Avenue" and that the scene of the accident was not visible from the show-up location.[5]

Feria stated that the show-up was conducted by his driving each victim separately in his vehicle to the location of the show-up. He had each victim sit "in the front passenger seat of the vehicle and I had already told them they were going to look at some people who may or may not be

---

[4] Hearing transcript, 6-11.

[5] *Id.* at 12-14.

involved in the incident. I wanted them to look at the people and let me know if they recognize them, and if so, how."[6] Each victim was driven separately to view the defendant and his brother, who also were viewed separately. Each victim, without hesitation, immediately identified the defendant as being the person who committed the carjacking and robbery.[7] Following identification by a victim, such victim was then isolated from the remaining victims to preclude their advising the remaining victims that an identification had been made.

The defendant claims that the show-up was unduly suggestive because the defendant was "[t]he only suspect initially shown to the alleged victims" and that the descriptions given by the victims were "of an extremely general nature." He contends that the witnesses only observed the defendant for a brief period of time while he was wearing a mask, and that the victims were under stress because of their experience.

The Eleventh Circuit, in *U.S. v. Winfrey*, 403 Fed,Appx. 432, 2010 WL 4683627, at *3 (11th Cir. November 19, 2010), provides a two-part test to determine whether an out-of-court identification was properly admitted:

> First, we consider whether the original identification procedure was unduly suggestive. If we conclude that it was, we then consider whether, under the totality of the circumstances, "the identification was nonetheless reliable." At the second step, we consider several factors to determine the identification's reliability, including: (1) the opportunity the witness had to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

Although the victims viewed the defendant for a short period of time, they were face-to-face, which

---

[6]*Id.* at 17.

[7]*Id.* at 17-20.

5

allowed the victims to focus on features and facts that they utilized in the show-up. The descriptions given by the victims prior to the show-up were consistent with their view of the defendant and they were certain as to their identification of the defendant.

*Winfrey* further tells us that "show ups are unnecessarily suggestive only when police aggravate the suggestiveness of the confrontation." *Id.* at *2 (internal quotations omitted); *Neil v. Biggers*, 409 U.S. 188 (1972); *United States v. Beale*, 921 F.2d 1412 (11th Cir. 1991). Here, the police did nothing that would constitute aggravation of any suggestiveness of the confrontation. Indeed, they took appropriate steps to avoid suggestiveness.

Even though the defendant and his brother were handcuffed at the time of the show-up, no showing was made that the handcuffs were related to the carjacking. In *U.S. v. Walker*, 201 Fed. Appx. 737, 2006 WL 3019187, at *3-4 (11th Cir. October 24, 2006) the Eleventh Circuit held that a show-up was not undluly suggestive where the defendant "was presented for identification singly, in handcuffs, and surrounded by police."

Although show-ups can be suggestive, "admission of evidence of a show-up without more does not violate due process." *Neil*, 409 U.S. at 198. Here, the show-up took place "maybe an hour, hour and a half maybe" following the commission of the crime.[8] Immediate confrontations allow identification before the suspect has altered his appearance and while the witness's memory is fresh, and permit the quick release of innocent persons.

The totality of circumstances, even if the show-ups were unduly suggestive, which they were not, clearly show the reliability of the identifications by the victims, for all of the reasons set forth above. The victims, during the commission of the offense, were face to face with the defendant and

---

[8] *Id.* at 21.

had ample opportunity to note various items of description which were related to the police.  Each victim quickly and accurately identified the defendant by referring to the items of description which they had given to the police.

The defense presented the testimony of Officer Marcel Orta of the Miami-Dade Police Department.  Officer Orta's testimony was essentially corroborative of Detective Feria's testimony and has no effect upon the Court's disposition of the defendant's motion now under consideration.

Based upon the Court's review of the record in this cause and testimony presented at the hearing, the Court finds that the testimony of Detective Feria is highly credible, persuasive, and not rebutted by the defense.  The Court finds that the identification of the defendant in the show-up was appropriate and not unduly suggestive.  The steps taken by Detective Feria to avoid any suggestiveness fully accomplished that goal.

## CONCLUSION AND RECOMMENDATION

For reasons set forth above and based upon the Court's review of the record, and consideration of the testimony, submissions of the parties and argument of counsel, the undersigned respectfully

RECOMMENDS that the defendant Darius Moore's Motion to Suppress In-Court and Out-of-Court Identification [DE 26] be DENIED.

The parties have fourteen (14) days from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge Robert N. Scola, Jr.  See 28 U.S.C. §636 (1991).  Failure to file timely objections may bar the parties from attacking on appeal

the factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.), *cert. denied*, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 16th day of October 2012.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE